United States District Court
for the
Southern District of Florida

| | |
|---|---|
| The Makeup Blowout Sale Group, Inc., Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 20-20906-Civ-Scola ) |
| All that Glowz, Inc. and others, Defendants. | ) ) ) |

### Order Denying Motion to Dismiss

Now before the Court is Counterclaim Defendants the Makeup Blowout Sale Group, Inc. and Eli Frenkel's motion to dismiss (ECF No. 38) the Counterclaim Plaintiffs' claims for tortious interference and violation of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512(f) (ECF No. 36). For reasons stated herein, the Court **denies** the Counterclaim Defendants' motion to dismiss in its entirety. (**ECF No. 38**.)

1. **Background**[1]

In 2005, Eli Frenkel, Jovany Mamo, and a third-party launched a beauty supply business which they owned and operated until 2016 when that business, which had accumulated $300,000 in debt, was ultimately wound down and sold off. (ECF No. 36, ¶ 8-9.) As the business wound down, rather than paying off the company's debts from other ventures, Mr. Frenkel suggested allocating the former businesses's debts among Frenkel, Mamo, and their third-party business partner. (ECF No. 36, ¶ 11.) Mr. Frenkel launched a subsequent beauty sales business, Makeup Blowout Sale, and in exchange for his proposal on each individual paying down the debts, Mr. Frenkel offered Mamo either 2.5% of the shares in Makeup Blowout Sale, or to assist Mamo in launching his own makeup sales business. (ECF No. 36, ¶ 11.) Mamo chose to launch his own business, and together with his wife, Courtney Mamo, formed Beauty Pop-up in 2017. (ECF No. 36, ¶ 12.) Beauty Pop-up and Makeup Blowout Sale have essentially the same business model. In effect, they organize pop-up retail store events at various hotels, conference centers, fairgrounds, and other similar locations which feature various cosmetic, skincare, and haircare brands.

---

[1] The Court accepts the Counterclaim Plaintiffs' factual allegations as true for the purposes of evaluating the Counterclaim Defendants' motions to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

As promised, Mr. Frenkel assisted the Mamos in establishing their business, the Beauty Pop-up. Counterclaim Plaintiffs say Mr. Frenkel assisted them by providing them with a list of Makeup Blowout Sale's vendors, advising them on the selection of Beauty Pop-up's logo, advising on how to set up the venues where Beauty Pop-up holds its pop-up sale events, offering tips on how to use social media to promote its events, and introducing Counterclaim Plaintiffs to Lauren Lev, Mr. Frenkel's girlfriend, to manage Beauty Pop-up's social media accounts as she already managed social media for Makeup Blowout Sale. (ECF No. 36, ¶ 13.) In at least one social media post, Makeup Blowout Sale referred to Beauty Pop-up as its "sister company." (ECF No. 36, ¶ 14.) Counterclaim Plaintiffs also state that Mr. Frenkel consented to their use of Makeup Blowout Sale's protected images as part of his efforts in helping them set up Beauty Pop-up. (ECF No. 36, ¶ 13.)

Mr. Frenkel contends this assistance was always conditioned upon an agreement that the Mamos and Beauty Pop-up would not compete with the Makeup Blowout Sale. (ECF No. 38, at 2.) In violation of this alleged agreement with the Mamos, Mr. Frenkel suggests that in 2019, the Mamos began contacting businesses and venues where Makeup Blowout Sale intended to or previously had done business. (ECF No. 38, at 2.) Moreover, Mr. Frenkel contends that the Mamos improperly used Makeup Blowout Sale's trademarks and copyrighted materials to promote their business but says that they never had authorization to do so. (ECF No. 38, at 3.) In response to Beauty Pop-up's business expansion and use of Makeup Blowout Sale's materials, Mr. Frenkel contacted social media companies to end Counterclaim Plaintiffs' use of Makeup Blowout Sale's copyrighted and trademarked material and also contacted venues and vendors to make them aware of Counterclaim Plaintiffs' "wrongful acts." (ECF No. 38, at 3.) Mr. Frenkel also contacted social media companies to end Counterclaim Plaintiffs' use of a third-party vendor, Beauty Creations', copyrighted material on the basis that Mr. Frenkel was given authority by Beauty Creations to enforce its copyright. (ECF No. 38, at 7.) At least some of the Beauty Creations takedowns were issued in conjunction with a law firm, Cabilly & Co. Counterclaim Plaintiffs argue that Mr. Frenkel has tortiously interfered with their business relationships in violation of Florida law and that he has submitted dozens of DMCA takedown notices in violation of the DMCA, 17 U.S.C. § 512(f). (ECF No. 36, ¶ 20.) Mr. Frenkel argues that the Counterclaim Plaintiffs' claims for tortious interference and violation of the DMCA "are nothing more than a poorly disguised attempt to 'get back at' Frenkel and Makeup Blowout" for their actions and accordingly should be dismissed. (ECF No. 38, at 3.)

## 2. Standard of Review

When considering a motion to dismiss, the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the Counterclaim Plaintiffs. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under Federal Rule of Civil Procedure 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Counterclaim Plaintiffs must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.* In applying the Supreme Court's directives in *Twombly* and *Iqbal*, the Eleventh Circuit has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (citations omitted).

## 3. Analysis

### A. Scope of Materials Considered at Motion to Dismiss

The Counterclaim Defendants improperly submitted several exhibits with their Motion to Dismiss, including takedown notices submitted to Facebook; a March 20, 2020 letter between counsel for Makeup Blowout Sale and Beauty Pop-up; a letter between Mr. Frenkel and a third-party vendor, Beauty Creations; nearly 50 pages of screengrabs of the Beauty Pop-up's Facebook page; and an affidavit from Makeup Blowout Sale's CEO, Mr. Frenkel. The Court declines to consider this evidence at this stage.

At the motion to dismiss stage, a court's review is "limited to the four corners of the complaint" and as such courts are limited to considering the

complaint itself and any documents incorporated by reference, which are central to the claims. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). As the Court finds that the supplemental evidence provided by Counterclaim Defendants is outside the scope of the pleadings, this court declines to consider such evidence at this stage. *Gonzalez v. TRW Contracting, Inc.*, Case No. 09-23023-Civ-Ungaro, 2010 WL 11504808, at *1 (S.D. Fla. Feb. 8, 2010) (Ungaro, J.). While it is within the discretion of the Court to convert Counterclaim Defendants' motion to dismiss into one for summary judgment, the Court declines to do so. *Id.*

### B. Digital Millennium Copyright Act

Under the DMCA, "any person who knowingly materially misrepresents under this section (1) that material or activity is infringing, or (2) that material or activity was removed or disabled by mistake or misidentification, shall be liable for damages . . . incurred by the alleged infringer." 17 U.S.C. § 512(f). The Eleventh Circuit recently considered for the first-time misrepresentation claims under § 512(f). *Johnson v. New Destiny Christian Center Church, Inc.*, No. 19-11070, 2020 WL 5289881, at *4 (11th Cir. Sept. 4, 2020) ("this Court has yet to consider a misrepresentation of copyright infringement claim under 512(f)"). In evaluating § 512(f), the Eleventh Circuit noted that a copyright holder must consider whether potentially infringing material is fair use, as defined in 17 U.S.C. § 107, before issuing a takedown notice and further noted that failure to do so constitutes misrepresentation under § 512(f). *Id.* However, where a copyright holder has a subjective good faith belief that the use in question is not authorized and not fair use, the copyright holder has a complete defense to claims pursuant to § 512(f). *Id.* Pointing to language from the Ninth Circuit, the Eleventh Circuit explained courts "are in no position to dispute the copyright holder's belief even if we would have reached the opposite conclusion." *Id.* (quoting *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2016)). By way of example, in *Johnson*, the Eleventh Circuit found a litigant had a subjective good faith basis for issuing takedown notices after relying on the opinions and investigative work of counsel relating to infringement prior to issuing such notices. *Id.* at *4-5. Accordingly, the critical question here is whether Counterclaim Defendants had a good faith basis to issue takedown notices with respect Beauty Pop-up's potentially infringing content on Makeup Blowout Sale and Beauty Creations' behalf.

Construing all facts in favor of Counterclaim Plaintiffs, as the Court must at the motion to dismiss stage, the Court finds that the Counterclaim Defendants have failed to establish that they had a subjective good faith basis to issue the

takedown notices. Specifically, the Counterclaim Plaintiffs allege that Mr. Frenkel "show[ed] Mamo how to use images from Counter-Defendant Makeup Blowout's Facebook page" and "consented to Beauty Pop-up's use" of the Counterclaim Defendants' trademarked and copyrighted material. (ECF No. 36, at ¶ 13.) Moreover, the Counterclaim Plaintiffs allege that Mr. Frenkel introduced the Mamos to his girlfriend, Lauren Lev, so she could help manage Beauty Pop-up's Facebook account, a task she already undertook for Make-up Blowout Sale. (ECF No. 36, at ¶ 13.) Finally, Plaintiffs provided a screenshot of a Facebook post from the Makeup Blowout Sale referring to Beauty Pop-up as "our sister company," indicating there was a close relationship between the two businesses. While Counterclaim Defendants dispute these assertions, the Court is bound to apply the appropriate standard of review at this stage. Taking these facts as true, the Court finds that Counterclaim Plaintiffs have adequately stated a basis to pursue misrepresentation claims against Counterclaim Defendants, pursuant to 17 U.S.C. § 512(f).

Counterclaim Defendants also claim they had a good faith basis to issue takedown notices on behalf of a third-party vendor, Beauty Creations. (ECF No. 44, at 4.) It is possible that the record may show, consistent with *Johnson*, that Mr. Frenkel, in reliance on the investigative efforts and opinions of law firm Cabilly & Co. appropriately issued take down notices on Beauty Creations' behalf, but Counterclaim Defendants advance no arguments to that effect in their briefing. Rather, Counterclaim Plaintiffs' allegations suggest that Mr. Frenkel issued takedown notices in bad faith in order to harm Counterclaim Plaintiffs' business. (ECF No. 43, at 6.) Taking these allegations as true, the Court finds that Counterclaim Plaintiffs have also adequately stated potential claims for takedown notices submitted on Beauty Creations' behalf, pursuant to 17 U.S.C. § 512(f).

### C. Supplemental Jurisdiction

The Court also finds Counterclaim Defendants' arguments with respect to supplemental jurisdiction unavailing. Where a matter involves a mix of federal and state law issues arising from the same common nucleus of operative fact, as here, district courts are endowed with supplemental jurisdiction over all state law claims. 28 U.S.C. § 1367(a). In the Eleventh Circuit, "[w]henever a federal court has supplemental jurisdiction under Section 1367(a), that jurisdiction should be exercised" unless the exceptions discussed in 28 U.S.C. §§ 1367(b) or (c) apply. As the Parties do not assert this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, 28 U.S.C. §1367(b) does not apply. Similarly, the exceptions in 28 U.S.C. §1367(c) do not apply as the claim of tortious interference

is not "a novel or complex issue of State law," the state claim does not predominate over the federal claims, federal questions remain, and there are no other exceptional circumstances for declining jurisdiction. Accordingly, this Court chooses to exercise its powers of supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a).

### 4. Conclusion

The Court therefore **denies** the Counterclaim Defendants' motion to dismiss in its entirety. (**ECF No. 38**.)

**Done and ordered** at Miami, Florida on September 14, 2020.

Robert N. Scola, Jr.
United States District Judge